UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15CV-00212-DJH

RICHARD KERNS, et al.                                                              PLAINTIFFS

VS.

WANDA BEAM, et al.                                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This case arises from a dispute over the administration of the Thomas H. Kerns Trust. Plaintiffs, the lineal descendants of Thomas Kerns, believe Defendants, Wanda Beam and Town and Country Bank and Trust Company, caused disproportionate distributions to be made from a sub-trust of the Thomas H. Kerns Trust. These distributions allegedly resulted in the depletion of the corpus of the sub-trust to which Plaintiffs are remainder beneficiaries.

Presently, Plaintiffs have filed a Motion to Exclude the Expert Report and Testimony of Jack Combs, Jr. (DN 52). Defendants have responded in opposition and also requested an evidentiary hearing on the issue. (DN 53; DN 54). Plaintiffs have filed a reply (DN 60) and oppose an evidentiary hearing (DN 62). For the following reasons, the Court declines to hold an evidentiary hearing and grants Plaintiffs' motion.

Facts

In January of 1987, Thomas Kerns ("Kerns") created the Thomas H. Kerns Trust (the "Trust"). (DN 1, at ¶ 14). Kerns had six children with his first wife. (*Id.* at ¶ 15). After Kerns' first wife passed away, Kerns married Lila Kerns ("Mrs. Kerns") who had three children of her own. (*Id.*).

A. Terms of the Trust

The Trust divided Kerns' assets into two discrete sub-trusts: Trust A and Trust B. (*Id.* at ¶ 17). The language of the Trust requires the trustee to distribute the net income from both Trust A and Trust B to Mrs. Kerns during her lifetime. (*Id.* at ¶ 18; DN 53-1,Trust Document, Art. III(2)(a)). The trustee is further authorized to distribute "so much or all of the principal of Trust A or Trust B" as the trustee determines desirable for Mrs. Kerns "support, welfare, and best interests." (DN 1, at ¶ 18; DN 53-1,Trust Document, Art. III(2)(b)). In exercising this discretion to make distributions of principal to Mrs. Kerns, the trustee need not consider the interests of any other beneficiary. (DN 53-1, Trust Document, Art. III(2)(b)).

The Trust then goes on to further divide Trust A into Trust A-1 and Trust A-2. (DN 1, at ¶ 20; DN 53-1, Trust Document, Art. III(3)(a)). Mrs. Kerns could withdraw the principal of Trust A-1 at any time during her life by executing a signed request to the trustee. (DN 1, at ¶ 19; DN 53-1, Trust Document, Art. III(3)(a)). To the extent that any assets remained in Trust A-1 at Mrs. Kerns' death, such assets would be distributed in accordance with a power of appointment executed by Mrs. Kerns or the executor of her estate. (DN 1, at ¶ 19; DN 53-1, Trust Document, Art. III(3)(b)). In other words, remaining assets in Trust A-1 would be distributed according to Mrs. Kerns' last will and testament.

The assets remaining in Trust A-2 at Mrs. Kerns' death, however, would be added to Trust B. (DN 1, at ¶ 20; DN 53-1, Trust Document, Art. III(3)(d)-(4). The assets in Trust B would then be distributed to Kerns' lineal descendants, *per stirpes*. (*Id.* at ¶ 20; DN 53-1, Trust Document, Art. III(4)). To summarize, the remainder beneficiaries of Trust A-1 and Trust B (by virtue of Trust A-2) are different.

### B. Administration of the Trust after Kerns' Death

When Kerns died in October of 1988, (*Id.* at ¶ 22), the Trust was managed first by Kerns' sister but subsequently transferred to and managed by Merrill Lynch. (*Id.*). In January of 2006, Mrs. Kerns executed a Power of Attorney appointing Wanda Beam ("Ms. Beam") as her lawful attorney-in-fact with authority to handle her financial affairs. (*Id.* at ¶ 24; DN 53, at p. 3). In September of 2013, Ms. Beam filed a petition in the Jefferson District Court to appoint Defendant Town & Country Bank and Trust Company (the "Bank") as the trustee. (DN 1, at ¶ 22). The Bank was appointed as the trustee one month later and has acted as trustee since that time. (*Id.*).

The Plaintiffs in this case are the remainder beneficiaries of Trust A-2 and Trust B, i.e., Kerns' descendants. (DN 1, at ¶ 21). According to the Plaintiffs, Ms. Beam engaged in lengthy efforts to preserve the assets in Trust A-1, of which she believed she was a remainder beneficiary. Plaintiffs allege that as soon as the Trust was transitioned to the Bank, "questionable distributions began to appear on the Trust's monthly statements." (*Id.* at ¶ 25). Specifically, Plaintiffs question "back pay" of $8,000 to Tracy Humphrey ("Ms. Humphrey") during a period of time where Risk Management Services ("RMS") was providing caregiver services to Mrs. Kerns. (*Id.* at ¶¶ 26-27). Apparently this "back pay" was distributed to Ms. Humphrey soon after she was arrested for possession of cocaine and drug paraphernalia, and Ms. Beam posted Ms. Humphrey's $5,000

bond. (*Id.* at 28). Plaintiffs are also suspicious of the Trust's payments for caregiver services to Neola Greenwell, Ms. Beam's 83-year-old mother, who provided no services to Mrs. Kerns, and of expenses Ms. Beam incurred on a trip to Florida that totaled over $30,000. (*Id.* at ¶¶ 32, 34-35).

In their Complaint, Plaintiffs brings claims of conversion, unjust enrichment, and constructive trust against Ms. Beam, and also seek a declaratory judgment that Ms. Beam's power of attorney is void and a full accounting of the funds she has received as Mrs. Kerns' attorney-in-fact. (DN 1, at ¶¶ 43-60). Plaintiffs also argue the Bank breached its fiduciary duty to all beneficiaries by favoring the remainder beneficiaries of Trust A-1 over those of Trusts A-2 and B, by failing to properly investigate the propriety of the distributions requested by Ms. Beam and by failing to recover funds that it was advised were improperly distributed to Beam's control. (*Id.* at ¶¶ 61-65). As a result of these alleged breaches by the Bank, Plaintiffs believe Trusts A-2 and B have been improperly drained. Plaintiffs further request the Bank provide a full accounting of the assets it has managed as trustee, request the Bank be required to disgorge the fees it has received as trustee, and the Bank be removed as trustee. (*Id.* at ¶¶ 72-82).

Analysis

A. Standard of Review

Federal Rule of Evidence 702 governs expert witness testimony. The Rule provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

4

  (c) the testimony is the product of reliable principles and methods; and

  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

  Under this Rule, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999), *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997)). In assessing reliability, the Court must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the Supreme Court identified a non-exhaustive list of factors to evaluate the reliability of a proposed expert's opinion, including (1) whether the theory or method in question "can be (and has been) tested;" (2) whether it "has been subjected to peer review and publication;" (3) whether it has a "known or potential rate of error;" and (4) whether the theory or technique enjoys "general acceptance: in the relevant scientific community." 509 U.S. at 593-94.

  *Daubert's* gatekeeping requirement applies not only to "scientific" testimony but extends to all expert testimony within the scope of Rule 702. *Kumho Tire,* 526 U.S. at 147; *see also Shepherd v. Unumprovident Corp.*, 381 F. Supp. 2d 608, 611 (E.D. Ky. 2005). *Daubert's* admissibility considerations, therefore, are "relative ones, depending on the type of expert and the nature of the proffered testimony." *Shepherd*, 381 F. Supp. 2d at 611. In sum, these considerations remind trial courts that expert testimony must be relevant to the issues being decided, must meet the required standards, and must be at least potentially helpful to the trier of fact. *Id.*

B. Evidentiary Hearing

District courts within the Sixth Circuit are not required to hold an evidentiary hearing on *Daubert* matters. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001) (citing *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999)). Where parties submit sufficient information in their briefs to permit the Court to adjudicate such "*Daubert* motions," there is no need to conduct a separate evidentiary hearing. *Zuzula v. ABB Power T&D Co., Inc.*, 267 F. Supp. 2d 703, 706 (E.D. Mich. June 3, 2003) (citing *Greenwell*, 184 F.3d at 498).

After reviewing the parties' briefs, the Court finds there is an adequate basis from which to determine the reliability and relevancy of the expert's opinion and no evidentiary hearing is necessary.

C. Mr. Combs' Expert Opinion

Mr. Combs' opinion begins by stating his qualifications, publications, and other cases, and then listing the information and materials he considered in forming his conclusions. (DN 52-2, at p. 2). He then goes on to summarize the Plaintiffs' claims, the operative statutes, and the operative trust provisions involved in the case. (*Id.* at pp. 3-4).

As for the substance of his opinion, Mr. Combs draws four main points. First, he states that "First Bankers acted reasonably at all times and in accordance with the terms of the Trust with respect to the actions challenged by the Plaintiffs" because the Trust provides the Bank with liberal discretion regarding the principal distributions for the benefit of Mrs. Kerns. (*Id.* at p. 5). Second, Mr. Combs opines that all of the expenses challenged by Plaintiffs "qualify as furthering the support, welfare, or best interests of Mrs. Kerns in accordance with the terms of the Trust." (*Id.*). Third, Mr. Combs addresses Plaintiffs' challenges to the payments made to Tracey Humphrey

based on her alleged arrest for drug possession at or near the time Humphrey provided caregiver services to Mrs. Kerns. (*Id.*). Mr. Combs concludes it was well within the Bank's right to make the distribution relating to the services provided by Ms. Humphrey. (*Id.*). Lastly, Mr. Combs explains that "First Bankers acted reasonably and in accordance with the terms of the Trust when it made distributions from principal, even if it did not take into consideration Mrs. Kerns' other assets" because the Trust expressly provides that the Bank, as trustee, is not required to take into account any other property or sources of support of Mrs. Kerns in determining discretionary payments of principal to her. (*Id.* at p. 6).

### D. Plaintiffs' Motion to Exclude

Plaintiffs provide three arguments for excluding Mr. Combs' expert report: (1) it contains opinions as to the ultimate issues in the case; (2) it is unreliable; and (3) it will not assist the trier of fact.

### A. Does Mr. Combs opine as to the ultimate issues in the case?

Plaintiffs first allege that Mr. Combs improperly attempts to define the scope of the Bank's fiduciary duty and then answers the ultimate issue of whether the Bank breached such fiduciary duty. (DN 52-1, at pp. 6-8). Because Mr. Combs defined the Bank's relevant fiduciary duty as not including the "employing or investigating the backgrounds and qualifications of care-givers," Plaintiffs believe he resolved that the Bank did not breach its fiduciary duty by paying Ms. Humphrey without conducting investigation. (*Id.* at p. 8). Essentially, Plaintiffs feel that Mr. Combs excluded any potential liability of the Bank in his opinion.

Defendants respond that Mr. Combs' opinion does not contain an impermissible legal conclusion because nowhere in the opinion does he specifically state that the Bank did not breach

7

a fiduciary duty. (DN 53, at p. 10). Rather, Defendants argue Mr. Combs evaluated the Bank's conduct based on his significant personal experience regarding the standard of care of corporate trustees with respect to trust administration and trust distributions. (*Id.*).

In the past a general doctrine prohibited witnesses from offering opinions as to the ultimate issue to be adjudicated in a case. *See* Fed. R. Evid. 704 (Advisory Committee Notes to 1972 Proposed Rules). Rule 704, however, abolished that "ultimate issue" doctrine and provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." *Id.* Although Rule 704 eliminated the prohibition on ultimate issue testimony, it did "not lower the bars so as to admit all opinions." *Id.* Courts within this Circuit, accordingly, have precluded expert testimony that merely amounts to a legal conclusion or tells the jury what result to reach. *Sutton v. Metro. Gov. of Nashville & Davidson Cnty.*, 3:10 C 00400, 2016 WL 9116026, at *4 (M.D. Tenn. Apr. 8, 2016) (citing *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (additional citations omitted)); *see also Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670, 677 (W.D. Mich. 2003). On the other hand, the district court may admit opinion testimony "if the expert's specialized knowledge is helpful to the jury to understand the evidence or determine a fact in issue, even if the opinion embraces an ultimate issue to be decided by the jury." *Century Indem. Co.*, 254 F. Supp. 2d at 677 (quoting *United States v. Brown*, 110 F.3d 605, 610 (8th Cir. 1997)).

Here, Mr. Combs does not opine as to legal conclusions. Although he discussed the Bank's obligations as trustee and concluded that the Bank was not responsible under those obligations for employing or investigating the backgrounds and qualifications of care givers for Mrs. Kerns, he never explicitly states that the Bank did not breach its fiduciary duty. Some of Mr. Combs'

8

conclusions relate to elements of Plaintiffs' causes of action; however, his report does not explicitly tell the jury what result to reach. *See, e.g.*, *Great Am. Ins. Co. v. Poynter*, No. 1:10-CV-00161-JHM, 2013 WL 1181445, at *13 (W.D. Ky. Mar. 20, 2013) ("experts often testify as to professional standards of care and whether they have been breached"); *Hans v. Tharaldson*, No. 3:05-cv-115, 2011 WL 6937598, at *5 (D.N.D., Dec. 23, 2011) ("[a]lthough [expert] may not opine as to ultimate issue of whether Tharaldson violated ERISA, he may testify about the duty to act prudently, the standard of care applicable to a fiduciary in this situation . . ."). Accordingly, this is not a basis for excluding Mr. Combs' opinion.

## B. Is Mr. Combs' opinion reliable?

Plaintiffs next claim that Mr. Combs' reliance on his undefined experience in making his opinion renders it unreliable. (DN 52-1, at p. 8). Because Mr. Combs fails to provide an explanation as to how his general experience assisted him in reviewing the facts and forming his conclusions, Plaintiffs claim they will be unable to cross-examine his methodology at trial. (*Id.* at p. 9). Defendants, in response, point out that the *Daubert* factors are irrelevant in determining the reliability of Mr. Combs' testimony here because his testimony is neither scientific nor technical. (DN 53, at p. 14). The relevant reliability concerns for Mr. Combs' opinion, Defendants argue, focus on his "personal knowledge and experience." (*Id.* at pp. 14-25 (quoting *First Tenn. Bank Nat. Assoc. v. Barretto*, 268 F.3d 319 (6th Cir. 2001) (quoting *Kumho Tire*, 526 U.S. at 150))). To support their argument, Defendants cite to the *Salmon v. Old Nat. Bank* case from this district, where the court permitted an expert with extensive experience in trust administration, including over fifty years of work at seven banks, to testify regarding a former trustee's alleged breach of the prudent investor rule. (*Id.* at pp. 16-17 (citing *Salmon*, 2012 WL 4213643, at *2-8)). Plaintiffs

9

contend, in reply, that the expert in *Salmon* explained in his report how his experience supported his conclusions, which is distinguishable from Mr. Combs' report in this case. (DN 60, at pp. 6-7).

Defendants are correct that the *Daubert* factors are not applicable to every expert opinion. *Kumho Tire*, 526 U.S. at 150 ("Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case."). In some disciplines, experience is the only basis for reliable expert testimony. *See Scatuorchio Racing Stable, LLC v. Walmac Stud Management LLC*, No. 5:11-374-DCR, 2014 WL 1744858, at *2 (E.D. Ky. May 1, 2014). But where an expert witness relies on personal knowledge or experience, he or she "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (quoting Fed. R. Evid. 702 (Advisory Committee Note) (citing *Daubert*, 43 F.3d 1311, 1319 (9th Cir. 1995)). Per the Supreme Court's guidance, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Scott v. Deerbrook Ins.Co*, 714 F. Supp. 2d 670, 674 (E.D. Ky. 2010) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997)).

The Court finds that such a gap exists here. Although it is clear from Mr. Combs' resume that he has ample experience in the field of trust administration and trust distribution, he merely states that he applied his "years of experience as a trust officer and officer of financial institutions" when reviewing the case materials and forming his conclusions.[1] Mr. Combs fails to explain how

---

1 Mr. Combs' experience can be summarized as follows. From 1975 to 1995, Mr. Combs worked as a Trust Administrator first at Louisville Trust Company and later at Liberty National Bank & Trust Company. (DN 53-9, at p. 9). Mr. Combs also served as Executive Vice-President of Bank One Kentucky for two years and as Managing

his experience with trust administration led to the conclusions he reached, why his experience was a sufficient basis for his opinion, and how he applied his experience to the facts of this case.

The Court also agrees with Plaintiffs' position that the admissible expert opinion in *Salmon* is distinguishable from the present case. In *Salmon*, the expert's analysis indicated reliance on "industry customs" and noted that "[i]n the trust industry, process is unusually important because trustees are managing someone else's property" and that "there remain 'national standards' of appropriate trust management as evidenced by the banks that 'tout and advertise' certain conduct, behavior, and accountability when marketing their trust services." 2012 WL 4213643, at *3. The expert in *Salmon* also identified nine pieces of information that, based on his experience, a trustee should know in implementing an investment decision. *Id.* Here, Mr. Combs does not identify any industry standards or customs he is relying on in forming his opinions. Beyond citing to statutes and stating that he relied on his experience, Mr. Combs provides no explanation tying his experience to his conclusions. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801-02 (6th Cir. 2000) (citations omitted) ("[A]n expert's opinion must be supported by 'more than subjective belief and unsupported speculation'").

Because the Court is left with only Mr. Combs' *ipse dixit* to connect the proffered testimony with the facts of the case, his opinion is not reliable. *See Georgel v. State Farm Mut. Auto Ins. Co*, No. 13-57-DLB-EBA, 2015 WL 4678935, at *8 (E.D. Ky. Aug. 6, 2015) (excluding expert opinion where too great of an analytical gap existed between the data and the opinion offered and where expert failed to explain why his experience provided a sufficient basis for his opinion); *see also See Louisville Marketing, Inc. v. Jewelry Candles, LLC*, No. 3:15-CV-00084,

---

Director of Bank of Louisville for five years. (*Id.*). Since 2002 Mr. Combs has served as in-house Trust Counsel for Commonwealth Bank and Trust Company. (*Id.*).

2016 WL 6584916, at *4 (W.D. Ky. Nov. 4, 2016) (excluding the opinion of expert with twenty years of experience because it was speculative and relied on vague experience and industry standards).

Defendants' allegation that Plaintiffs should have deposed Mr. Combs if they sought further explanation about his experience or how he applied his experience to the facts of the case and his conclusions (DN 53, at pp. 1, 17-18) is likewise unpersuasive. Although a party generally has the right to "depose any person who has been identified as an expert whose opinions may be presented at trial," Fed. R. Civ. P. 26(b)(4)(A), there is no requirement that a party do so. To be sure, numerous district courts have rejected the Defendants' position: "that the failure to depose an expert affects the [Plaintiffs'] right to object to the expert's testimony." *Hinton v. Outboard Marine Corp.*, 828 F. Supp. 2d 366, 370-71 (D. Me. 2011) (collecting cases). It was therefore appropriate for Plaintiffs to challenge Mr. Combs' opinion in the instant *Daubert* motion, and Plaintiffs' decision to forego deposing Mr. Combs does not undercut their present arguments for exclusion.

### B. Is Mr. Combs' opinion helpful to the trier of fact?

Plaintiffs lastly argue that Mr. Combs' opinion will not assist the trier of fact because he merely recites testimony regarding the Bank's distribution scheme that fact witnesses will testify to at trial. (DN 52-1, at pp. 11-12). Specifically, Plaintiffs highlight the Bank's testimony from the 30(b)(6) deposition that it has discretion on how it transfers and uses the assets of the Trust. (*Id.* at p. 12). Mr. Combs' mere regurgitation of the Bank's position held out as an expert opinion, Plaintiffs allege, will actually confuse the obligations of fact and expert witnesses for the trier of fact. (*Id.* at p. 13). Defendants counter that Mr. Combs' opinion is relevant to the facts at issue in

the case and, therefore, his testimony will assist the trier of fact in determining whether or not the Bank breached its fiduciary duty. (DN 53, at pp. 18-19).

As discussed above, Rule 702 also requires that expert testimony be relevant, meaning it should help the fact finder to better understand the evidence or to decide a material fact in issue. *See United States v. Gallion*, 257 F.R.D. 141, 150 (E.D. Ky. 2009) (citing *In re Scrap Metal*, 527 F.3d at 529); *see also Zuzula v. ABB Power T&D Co., Inc.*, 267 F. Supp. 2d 703, 711 (E.D. Mich. 2003). Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony. *See Taylor v. Illinois Cent. R.R. Co.*, 8 F.3d 84, 586 (7th Cir. 1993); *Sullivan v. Alcatel-Lucent USA Inc.*, No. 12 C 07528, 2014 WL 3558690, at *6 (N.D. Ill. July 17, 2014). Additionally, expert testimony that is needlessly cumulative of lay witness testimony does not assist the trier of fact and may be excluded. *See Schwartz v. Caravan Trucking,L.L.C.*, 2011 WL 703925, at *3 (E.D.N.Y. Feb. 17, 2011) (where expert testimony is "needlessly cumulative of lay witness testimony, the testimony would not assist the trier of fact, and may be excluded") (citing *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004)); *Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 925 (S.D. Ohio 2000) ("witness may not give expert opinions which simply verify issues of fact about which lay witnesses will testify[.]").

In this case, the Court finds that a lay person without experience in trust administration could read the Trust document and make his or her own conclusions as to the reasonableness of the Bank's actions as trustee without Mr. Combs' expert report. While trust administration and distribution may not usually be considered matters within the understanding of the average lay person, Mr. Combs' cursory conclusions as to the reasonableness of the Bank's actions are well

within the understanding of lay people. Further, Mr. Combs' testimony fails to assist the trier of fact because it largely mirrors the Bank's testimony as a fact witness. While there is no doubt that a nexus exists between Mr. Combs' testimony and the issues in the case, based on the above considerations, the Court finds the relevancy of Mr. Combs' opinion is questionable.

## Conclusion

Again, the fundamental objective when considering the admissibility of expert testimony is to "'ensure the reliability and relevancy' of that testimony." *First Tenn. Bank Nat. Assoc. v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (quoting *Kumho Tire*, 526 U.S. at 152). Mindful that exclusion of expert testimony is the exception and not the rule, *In re Scrap Metal*, 527 F.3d at 530, the Court nevertheless finds Mr. Combs' opinion is not sufficiently reliable or relevant to be admissible at trial. As *Daubert* and Rule 702 require more than the proffered expert's word to support his testimony, Mr. Combs' opinion regarding the Bank's actions under the discretion of the trust instrument is excluded.

## ORDER

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Exclude the Opinions and Testimony of Jack Combs, Jr., (DN 52) is **GRANTED.** Defendants' Motion for an Evidentiary Hearing (DN 54) is **DENIED.**

Copies:    Counsel of Record