UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICHARD KERNS, et al.,                                    Plaintiffs,

v.                                        Civil Action No. 3:15-cv-212-DJH-DW

WANDA BEAM, et al.,                                      Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs are the remainder beneficiaries of a trust created by the late Thomas Kerns.

Plaintiffs bring this action against Wanda Beam, attorney-in-fact for Lila Kerns, who is the life

beneficiary of the trust; and Town & Country Bank and Trust Company, the trustee, alleging

misuse of trust funds. (Docket No. 16) They assert claims for conversion and unjust enrichment

against Beam and seek to impose a constructive trust on certain funds in her possession.[1] (*Id.*)

They claim that Town & Country breached its fiduciary duty, and they seek remedies including

disgorgement, accounting, and trustee removal. (*Id.*) Beam requests summary judgment on all

of Plaintiffs' claims. (D.N. 49) Town & Country requests summary judgment on all of

Plaintiffs' claims, except the claim for accounting. (D.N. 51) Plaintiffs seek summary judgment

on all of their claims against Defendants.[2] (D.N. 50) The Court heard oral argument on October

---

[1] In addition, Plaintiffs initially sought a declaratory judgment voiding the power of attorney that Beam held for Lila Kerns, and an accounting from Beam. (D.N. 16, PageID # 130-31) In response to Defendants' motions for summary judgment, however, Plaintiffs state that they have decided not to pursue an accounting from Beam or her removal as Lila Kerns's attorney-in-fact. (D.N. 57, PageID # 1151)

[2] Although Plaintiffs' motion is styled as a "motion for summary judgment," their memorandum in support does not address the disgorgement, accounting, and trustee-removal claims against Town & Country that are listed in the complaint. (*See* D.N. 50; D.N. 50-1) Those claims are more accurately described as remedies that necessarily rise and fall with Plaintiffs' breach-of-fiduciary-duty claim. *See* Ky. Rev. Stat. § 386B.7-060(2); *Watkins v. Tr. Under Will of William Marshall Bullitt ex rel. PNC Bank, N.A.*, No. 3:13-cv-1113-DJH-CHL, 2017 WL 3710088, at \*7

---

27, 2017.  (D.N. 67)  For the reasons discussed below, Beam's motion will be granted; Town &

Country's motion will be granted; and Plaintiffs' motion will be denied.

## I.     BACKGROUND

### A.     Relevant Facts

In 1987, Thomas Kerns created the Trust at issue in this case.  (*See* D.N. 51-2)  When

Thomas Kerns died in 1988, the Trust was divided into three separate trusts: Trust A-1, Trust A-

2, and Trust B.  (*See id.*, PageID # 663-66)  Thomas Kerns was married to Lila Kerns when he

created the Trust.  (*Id.*, PageID # 661)  The Trust provided that Lila Kerns was to receive the

income of Trusts A and B during her lifetime.  (*Id.*, PageID # 665)  The Trust further provided

that "[t]he trustee may in its discretion pay to my wife, or use for her benefit, so much or all of

the principal of Trust A or Trust B as the trustee from time to time determines to be required or

desirable for her support, welfare[,] and best interests."  (*Id.*)  Finally, the Trust provided that

"[t]he trustee need not consider the interests of any other beneficiary in making distributions to

my wife or for her benefit."  (*Id.*)  Plaintiffs, the children and grandchildren of Thomas Kerns,

are the only remainder beneficiaries of Trusts A-2 and B.  (D.N. 50-2, PageID # 408-09; D.N.

57-1, PageID # 1161-62)  They stand to take equal shares of what is left of those trusts at the

time of Lila Kerns's death.  (*Id.*)  Lila Kerns now suffers from severe amnesia disorder and

dementia.  (D.N. 51-7, PageID # 734-35)  She has required caregiver services around the clock

since January 2013.  (*Id.*, PageID # 726)

Thomas Kerns declared himself trustee of the Trust.  (D.N. 50-2, PageID # 403)  Upon

Thomas Kerns's death, Patricia Blanchard became trustee.  (*Id.*, PageID # 416)  Merrill Lynch

(W.D. Ky. Aug. 28, 2017); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-01047-CRS-DW, 2017 WL 2989183, at *7 (W.D. Ky. July 13, 2017).  The Court will therefore consider whether the plaintiffs are entitled to these remedies after determining the merits of their breach-of-fiduciary-duty claim against Town & Country.

then took over as trustee in 2010. (*See* D.N. 51-3, PageID # 682) During Merrill Lynch's tenure as trustee, it paid trust income to Lila Kerns and made other disbursements for her benefit from trust principal. (D.N. 51-7, PageID # 718, 723; D.N. 51-8, PageID # 747) Generally, Merrill Lynch allocated one-third of these other disbursements to Trust A-1 and two-thirds to Trust A-2. (*See* D.N. 51-9, PageID # 756; D.N. 51-7, PageID # 723)

Wanda Beam, Lila Kerns's niece and attorney-in-fact (D.N. 51-7, PageID # 714, 736), met with Town & Country in November 2012 to discuss the possibility of the bank becoming trustee. (D.N. 50-8, PageID # 472) During this meeting, Town & Country considered setting up a conference call with Plaintiffs to discuss removing Merrill Lynch as trustee. (*See id.*, PageID # 472-73) That conference call never took place, however. (*See id.*, PageID # 473) Town & Country also contemplated trying to get all of the beneficiaries to agree to move the Trust but determined that the terms of the Trust might not require agreement. (*See* D.N. 50-30, PageID # 608)

The Trust gave Lila Kerns the right to withdraw the principal of Trust A-1 at any time. (D.N. 51-2, PageID # 666) An employee of Town & Country suggested that it would be in Lila Kerns's best interest to make Trust A-1 an investment management account (IMA) in accordance with the terms of the Trust. (D.N. 50-8, PageID # 474) Lila Kerns exercised her right to withdraw the principal of Trust A-1 in a signed letter dated July 25, 2013. (D.N. 51-7, PageID # 737) Upon transfer of the trust funds from Merrill Lynch to Town & Country, the assets previously held in Trust A-1 were placed into an IMA for Lila Kerns. (D.N. 51-4, PageID # 691) At that point, Trust A-1 effectively ceased to exist. (*See* D.N. 51-8, PageID # 742)

By the time Town & Country took over as trustee in October 2013 (D.N. 51-4, PageID # 691, 695), bank officers suspected that Merrill Lynch had favored the remainder beneficiaries

(Plaintiffs) over Lila Kerns in its administration of the Trust.  (D.N. 50-8, PageID # 472, 474)

One plaintiff, Richard Kerns, stated in his deposition that he learned that the Trust was being moved to Town & Country from someone at Merrill Lynch.  (D.N. 50-9, PageID # 479)  Town & Country began sending account statements to Plaintiffs upon becoming trustee.  (D.N. 56-3, PageID # 1088; *see* D.N. 56-8, PageID # 1112)  Richard Kerns admitted in his deposition that he started receiving monthly statements from Town & Country either as soon as, or within a month or two of, the bank taking over as trustee.  (D.N. 50-9, PageID # 479)  As trustee, Town & Country was responsible for managing Trusts A-2 and B.  (*See* D.N. 51-8, PageID # 742, 748)

In December 2013, Beam emailed Town & Country to confirm that bills she sent for Lila Kerns were not being paid out of the funds formerly in Trust A-1 (D.N. 57-14, PageID # 1303), which were then contained in Lila Kerns's IMA (D.N. 51-4, PageID # 691).  Town & Country responded that in fact one-third of caregiver expenses were paid out of the IMA, with the remaining two-thirds paid out of Trust A-2.  (D.N. 57-14, PageID # 1302; D.N. 50-15, PageID # 535)  In January 2014, Town & Country started paying all of Lila Kerns's caregiver expenses from Trusts A-2 and B.  (D.N. 51-8, PageID # 748; D.N. 51-4, PageID # 691)  Town & Country changed the disbursement arrangement so that all of Lila Kerns's caregiver expenses would be paid with trust funds as opposed to the funds in the IMA.[3]  (*See* D.N. 51-8, PageID # 747-48; D.N. 51-4, PageID # 691)  Merrill Lynch had also paid all of Lila Kerns's caregiver expenses with trust funds.  (*See* D.N. 51-8, PageID # 748)

Town & Country withdrew $7,929 from Trust A-2 to pay the mortgage on Lila Kerns's house in Bardstown.  (D.N. 49-3, PageID # 252)  Beam lived in the house from May 2014 to

---

[3] In July 2014, Town & Country again changed its disbursement scheme and began using trust income to pay Lila Kerns's expenses directly (as opposed to disbursing the income into her IMA).  (D.N. 50-22, PageID # 562; D.N. 51-8, PageID # 748)  Plaintiffs' counsel clarified at oral argument that the plaintiffs are not challenging this later change.

April 2015 without paying rent.  (*See* D.N. 51-7, PageID # 731-33; *see also* D.N. 57-23, PageID # 1335)  During that time, Beam cleaned the house and prepared it for sale.  (D.N. 51-7, PageID # 732; *see* D.N. 57-23, PageID # 1335)  Later, Beam took $45,000 from Lila Kerns's IMA, which contained the proceeds from the sale of the Bardstown house, claiming it was payment for services she provided to Lila Kerns.  (*See* D.N. 50-25, PageID # 572; D.N. 51-1, PageID # 635; D.N. 57, PageID # 1149-50)  On July 28, 2014, Town & Country sent Beam and Lila Kerns a letter purportedly confirming an agreement that Beam would repay Trust A-2 for the mortgage payments it funded while she lived in the house rent-free.  (D.N. 57-23, PageID # 1335-36)  However, Beam never signed the agreement that was attached to that letter or any other agreement to reimburse the Trust.  (*See* D.N. 57-12, PageID # 1286-89)

In November 2013, Town & Country paid Tracy Humphrey $8,000 from Trust A-2.  (D.N. 51-8, PageID # 745, 751)  The payment covered back pay for caregiver services Humphrey provided to Lila Kerns.  (*Id.*)  Prior to making this disbursement, Town & Country reviewed time sheets signed by Beam and Humphrey, communicated with RMS[4] to confirm that RMS had not already paid Humphrey, and reviewed statements from Merrill Lynch to ensure that Merrill Lynch had not already paid caregivers for the relevant hours.  (*Id.*, PageID # 745)  Humphrey had been arrested in August 2013.  (D.N. 57-16, PageID # 1307-09)  When Town & Country learned of this, it reviewed the time sheet for that period but was unable to conclude that Humphrey had been paid for time that she did not spend working.  (*See* D.N. 51-8, PageID # 745-46)  Town & Country discussed the matter further with Beam, who explained that Humphrey initially received payment for the hours following her arrest but that whichever

---

[4] Risk Management Strategies, Inc. (RMS) paid caregivers who provided services for Lila Kerns. (*See* D.N. 51-8, PageID # 743, 752)

caregiver covered her shift during that time received the money in the end. (*See id.*, PageID # 746; D.N. 51-7, PageID # 729)

Neola Greenwell, Lila Kerns's sister and Beam's mother, was also paid trust funds for caregiver services rendered to Lila Kerns. (D.N. 51-8, PageID # 746) According to Beam, however, Greenwell was "not doing well medically" and "in really bad health." (D.N. 57-4, PageID # 1196; D.N. 57-17, PageID # 1312) Town & Country later explained that Greenwell was "a pass through for work actually performed by someone else." (D.N. 57-18, PageID # 1315) Laddie Joseph Tackett, Town & Country's assistant trust officer, clarified in his deposition that the money was paid to Paychex, a third-party paycheck provider, and that Greenwell was added to the payroll by Beam after she informed the bank that she needed to hire another caregiver until she found a new assisted-living home for Lila Kerns. (D.N. 51-8, PageID # 741, 746) Tackett testified that he told Beam to contact Paychex if she was going to add another caregiver and that he did not know at the time that the person she planned to add was Greenwell. (*Id.*, PageID # 746)

As of September 2016, Plaintiffs' remainder interest in Trusts A-2 and B has decreased from $1,609,716 to $1,532,808 since Town & Country took over as trustee.[5] (*See* D.N. 51-4, PageID # 692-93)

B. **Procedural Posture**

Plaintiffs' claims arise out of Defendants' alleged misuse of trust funds. Plaintiffs assert claims for conversion, unjust enrichment, and constructive trust against Beam. (D.N. 16; D.N. 57, PageID # 1151) Beam seeks summary judgment on these claims. (D.N. 49) Plaintiffs separately assert claims for breach of fiduciary duty, disgorgement, accounting, and removal of

---

[5] At oral argument, Town & Country's counsel stated that as of September 2017, the assets in Trusts A-2 and B were valued at $1.52 million.

trustee against Town & Country. (D.N. 16) Town & Country seeks summary judgment on all of these claims except the claim for accounting. (D.N. 51) Plaintiffs seek summary judgment on all claims. (D.N. 50) In total, the plaintiffs seek $72,826.94 in damages, which includes one-third of the distributions made to Lila Kerns's caregivers from January to July 2014 and mortgage payments that were made on Lila Kerns's Bardstown house from May 2014 to April 2015. (D.N. 50-31, PageID # 612-13)

## II. STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

### III.   DISCUSSION

#### A.   Claims Against Beam

Plaintiffs assert claims for conversion, unjust enrichment, and constructive trust against

Beam. (D.N. 16)

##### 1.   Conversion

Under Kentucky law,

> [a] successful claim of conversion requires a showing that (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Madison Capital Co. v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 931-32 (W.D. Ky. 2011). "It

is elementary, of course, that when property is held in trust the trustee holds the legal title and the

beneficiary or beneficiaries are considered to be owners of the equitable title." *Hatcher v. S.

Baptist Theological Seminary*, 632 S.W.2d 251, 252 (Ky. 1982).

Beam argues that she cannot be held liable for conversion because she has not received

any trust funds that would eventually pass to Plaintiffs. (D.N. 49-1, PageID # 243) Instead, she

claims, all disbursements Plaintiffs complain of were made for Lila Kerns's benefit. (*Id.*) But

Plaintiffs maintain that Beam received considerable benefits from the Trust to which she was not

entitled, including the amount of money from Trust A-2 that was used to pay the mortgage on

Lila Kerns's Bardstown house while Beam lived there rent-free. (D.N. 57, PageID # 1150)

The undisputed facts show that $7,929 was withdrawn from Trust A-2 to pay the

mortgage on Lila Kerns's Bardstown home from May 2014 to April 2015. (D.N. 49-3, PageID #

252)  It is likewise undisputed that Beam lived in the house during that time without paying rent.  (*See* D.N. 51-7, PageID # 731-33; *see also* D.N. 57-23, PageID # 1335)  Finally, it is undisputed that Plaintiffs are remainder beneficiaries of Trusts A-2 and B.  (*See* D.N. 50-2, PageID # 408-09)  Plaintiffs argue that Beam unlawfully converted trust funds by living in the house without paying rent.  (*See* D.N. 57, PageID # 1150; D.N. 50-1, PageID # 399)

Lila Kerns was still living at the time of the alleged conversion.  Therefore, Plaintiffs are remainder beneficiaries who do not hold legal title to any trust assets.  *See Hatcher*, 632 S.W.2d at 252.  Even assuming Beam wrongfully kept $7,929 in trust property for her own benefit, Plaintiffs cannot succeed on a conversion claim against her because they do not have legal title to the $7,929 in trust property that was allegedly converted.  *See Madison Capital Co.*, 765 F. Supp. 2d at 931-32.  The Court will therefore grant summary judgment to Beam on Plaintiffs' conversion claim.

### 2.  Unjust Enrichment

"For an unjust enrichment claim to be viable, the plaintiff must show the following elements: (1) 'a benefit conferred upon the defendant at the plaintiff's expense;' (2) a resulting appreciation of the benefit by the defendant; and (3) an inequitable retention of the benefit without payment for its value."  *United States v. Stevens*, 605 F. Supp. 2d 863, 869-70 (W.D. Ky. 2008) (citing *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987)).  "Kentucky courts have consistently found that the first element not only requires [that] a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit."  *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (citations omitted).

Beam argues that she did not receive a benefit at Plaintiffs' expense and that she received no inequitable benefit from the assets of Trusts A-2 and B. (D.N. 58, PageID # 1386; D.N. 49-1, PageID # 243) Plaintiffs argue that Beam had no right to money that could be traced to the Trust and that as beneficiaries of Trust A-2, they are entitled to recover assets from that trust that were taken by Beam. (D.N. 57, PageID # 1151; D.N. 50-1, PageID # 399-400) It appears from the plaintiffs' briefs and their counsel's representations at oral argument that the subject of their claim is again the funds that were taken from Trust A-2 to pay the mortgage on Lila Kerns's Bardstown house, where Beam lived for a period of time without paying rent. (*See* D.N. 57, PageID # 1149-50; D.N. 50-1, PageID # 398-400)

The facts relevant to Plaintiffs' unjust-enrichment claim mirror those discussed in the context of their conversion claim. Town & Country withdrew $7,929 from Trust A-2 to pay the mortgage on Lila Kerns's Bardstown home. (D.N. 49-3, PageID # 252) Beam lived in the house without paying rent for approximately one year. (*See* D.N. 51-7, PageID # 731-33; *see also* D.N. 57-23, PageID # 1335) During that time, Beam cleaned the house and prepared it for sale. (D.N. 51-7, PageID # 732) Beam later took $45,000 from Lila Kerns's IMA,[6] which contained the proceeds from the sale of the Bardstown house, claiming it was payment for services she provided to Kerns. (*See* D.N. 50-25, PageID # 572; D.N. 51-1, PageID # 635; D.N. 57, PageID # 1149-50)

Again, the undisputed facts fail to support Plaintiffs' claim. The law requires a showing that Plaintiffs conferred a benefit on Beam. *See Pixler*, 2011 WL 5597327, at *11. "The word

---

[6] Plaintiffs have no right to the funds in Lila Kerns's IMA, formerly contained in Trust A-1, because it is undisputed that the trust instrument gave Lila Kerns the right to withdraw the principal of Trust A-1 at any time. (D.N. 51-4, PageID # 691; D.N. 51-2, PageID # 666) Lila Kerns decided to withdraw those assets in a signed letter dated July 25, 2013. (D.N. 51-7, PageID # 737)

'confer' means 'to bestow from or as if from a position of superiority' or 'to give.'" *Dixie Fuel Co. v. Straight Creek, LLC*, No. 08-326-GFVT, 2011 WL 845828, at *5 (E.D. Ky. Mar. 8, 2011) (quoting *MPW Indus. Servs., Inc. v. Pollution Control Servs., Inc.*, No. 2:02-CV-955, 2006 WL 640438, at *9 (S.D. Ohio Mar. 9, 2006)). Plaintiffs claim that Beam was unjustly enriched by living in Lila Kerns's Bardstown house for free, but they have not shown that they acquiesced in Beam living there rent-free. The Court will therefore grant summary judgment to Beam on Plaintiffs' unjust-enrichment claim.

### 3. Constructive Trust

Courts impose a constructive trust "where property 'has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'" *Hurley v. Byassee*, No. 5:08-CV-28, 2009 WL 3806795, at *7 (W.D. Ky. Nov. 12, 2009) (quoting *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. Ct. App. 1985)). "A constructive trust may arise where it is demonstrated that 'the holder of the legal title obtained it through fraud, misrepresentation, concealments, undue influence, duress, or some other wrongful act whereby another is deprived of the title to his property.'" *Id.* (quoting *Lowe v. Lowe*, 229 S.W.2d 442, 443 (Ky. 1950)). The plaintiff "need not demonstrate actual fraud," *id.*; rather, "[t]he fraud may occur in any form of unconscionable conduct; taking advantage of one's weaknesses or necessities, or in any way violating equity in good conscience." *Kaplon*, 690 S.W.2d at 763 (citing *St. Louis & S. F. R. Co. v. Spiller*, 274 U.S. 304 (1927)). "The decision to impose a constructive trust lies within the Court's discretion under its equitable powers." *Madison Capital Co.*, 765 F. Supp. 2d at 935.

Kentucky law requires "the party seeking the imposition of a trust to establish a 'confidential relationship' with the party upon whom the trust is to be imposed." *Keeney v.*

*Keeney*, 223 S.W.3d 843, 849 (Ky. Ct. App. 2007). The existence of such a relationship is to be determined by the facts shown. *Id.* at 849-50. "The tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof." *Id.* at 850 (quoting *Appleby v. Buck*, 351 S.W.2d 494, 496 (Ky. 1961)).

Finally, "under Kentucky law[,] the limitations period for requesting establishment of a constructive trust is five years." *Williams ex rel. Regular Veterans Ass'n v. Ford*, No. 3:01-CV-664-H, 2002 WL 1808721, at *3 (W.D. Ky. Aug. 1, 2002); *see* Ky. Rev. Stat. § 413.120(11). The limitations period does not begin until discovery of the fraud giving rise to the claim for constructive trust. Ky. Rev. Stat. § 413.130(3); *see Blakley v. Hanberry*, 125 S.W. 703, 704-05 (Ky. 1910); *Commonwealth v. Clark*, 83 S.W. 100, 103 (Ky. 1904).

Beam argues that Plaintiffs' claim for a constructive trust must fail because she did not receive funds from Trusts A-2 and B and all distributions from those trusts were rightfully made for the support of Lila Kerns. (D.N. 49-1, PageID # 246; D.N. 55, PageID # 1000-01) Beam further argues that Plaintiffs cannot prove fraud and that any fraud claim would be time-barred. (D.N. 49-1, PageID # 246-47) Plaintiffs argue that Beam knew the character of the funds she took and therefore remained subject to the obligations of the Trust toward the beneficiaries. (D.N. 50-1, PageID # 399; D.N. 57, PageID # 1151) From the briefs and oral argument, it appears to the Court that Plaintiffs seek to impose a constructive trust on the funds Trust A-2 paid toward the mortgage on Lila Kerns's Bardstown house, where Beam lived rent-free for about a year. (*See* D.N. 50-1, PageID # 398-99; D.N. 57, PageID # 1149-51)

As an initial matter, a constructive trust on these funds would not be time-barred. Beam lived in the Bardstown house without paying rent from approximately May 2014 to April 2015.

(*See* D.N. 51-7, PageID # 731-33) Thus, May 2014 is the earliest that Plaintiffs could have discovered that trust funds were being used to fund Beam's rent-free living arrangement, and the five-year limitations period has not run since that time. Plaintiffs' claim fails on the merits, however, because they have not shown, or even argued, that a confidential relationship exists between them and Beam as required for imposition of a constructive trust under Kentucky law. *See Keeney*, 223 S.W.3d at 849 ("Kentucky courts have required the party seeking the imposition of a trust to establish a 'confidential relationship' with the party upon whom the trust is to be imposed."). The Court will therefore grant summary judgment to Beam on Plaintiffs' constructive-trust claim.[7] *See Celotex Corp.*, 477 U.S. at 322-23 (explaining that summary judgment against a party is appropriate where that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case").

### B. Claims Against Town & Country

Plaintiffs assert claims for breach of fiduciary duty, disgorgement, accounting, and removal of trustee against Town & Country. (D.N. 16) As explained above, for the plaintiffs' disgorgement, accounting, and trustee-removal claims (or more appropriately, requested remedies) to survive, Plaintiffs must first assert a viable breach-of-fiduciary-duty claim.

### 1. Breach of Fiduciary Duty

"Under Kentucky law, a plaintiff alleging breach of fiduciary duty must prove: '(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation.'" *Lowe v. CSL Plasma Inc.*, No. 3:12-CV-00591-CRS, 2016 WL 1090631, at *3 (W.D. Ky. Mar. 18, 2016)

---

[7] While the Court concludes that the causes of action against Beam fail, it is worth noting that Beam appears to have engaged in ill-advised self-dealing in her role as Lila Kerns's attorney-in-fact. These actions include Beam's hiring of her mother, who was in poor health, as a caregiver for Lila Kerns and Beam's receipt of a substantial amount of money ($45,000) from Lila Kerns's IMA. (*See* D.N. 51-8, PageID # 746; D.N. 57-4, PageID # 1196; D.N. 57-17, PageID # 1311-12; *see also* D.N. 50-25, PageID # 572; D.N. 57-24, PageID # 1339)

(quoting *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013)).

> As a general rule, the Court may conclude that a fiduciary relationship exists if it is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking."

*Id.* (quoting *Abney v. Amgen, Inc.*, 443 F.3d 540, 550 (6th Cir. 2006)). Kentucky courts have recognized that fiduciary relationships include that of trustee and beneficiary. *See Appleby*, 351 S.W.2d at 496. The question in this case is therefore whether Town & Country breached its fiduciary duty to Plaintiffs, and if so, whether the breach caused Plaintiffs' damages.

Kentucky adopted the Uniform Trust Code in 2014, but the Code does not apply to trustee acts completed before July 15, 2014. Ky. Rev. Stat. § 386B.11-040(1)(e); *see Middleton v. PNC Bank, NA*, No. 2012-CA-002142-MR, 2014 WL 5510872, at *3 (Ky. Ct. App. Oct. 31, 2014). As a result, the standards that apply to Town & Country's actions as trustee depend upon the timing of the actions Plaintiffs challenge. Plaintiffs challenge the following actions: (1) in November 2013, Town & Country distributed funds from Trust A-2 to pay Tracy Humphrey for caregiver services even though she had been arrested on one of the days that she was supposedly working; (2) Neola Greenwell received payment for caregiver services despite the fact that she was in bad health;[8] (3) in January 2014, Town & Country began paying the full amount of Lila Kerns's caregiver expenses from Trust A-2 rather than continuing to use the IMA for one-third of the expenses; (4) Town & Country took no action to obtain mortgage payments from Beam

---

[8] Plaintiffs' briefs do not explicitly state the date of this disbursement. (*See* D.N. 57, PageID # 1123; D.N. 50-1, PageID # 383) Nor do they cite from the record to show the date of this transaction. (*See id.*) Reference to the disbursement appears in the briefs immediately after discussion of the Humphrey payment (D.N. 57, PageID # 1123; D.N. 50-1, PageID # 382-83), which was made in November 2013 (D.N. 51-8, PageID # 751). From this sequence, the Court presumes that the two payments were made in the same timeframe.

after she reneged on an agreement with the bank to repay the Trust sometime after July 28, 2014; and (5) between 2012 and 2013, Town & Country considered having a conference call with Plaintiffs and also considered attempting to obtain agreement of the beneficiaries to move the Trust but ultimately decided against both courses of action.[9] (D.N. 50-1, PageID # 380, 382-83, 385, 390, 392, 395; D.N. 57, PageID # 1120, 1123-25, 1131, 1135, 1141)

The Uniform Trust Code thus applies only to Town & Country's failure to take action to obtain mortgage payments from Beam after she declined to repay the Trust, as it is the only challenged action that took place on or after July 15, 2014. *See* Ky. Rev. Stat. § 386B.11-040(1)(e). The remainder of the challenged conduct will be analyzed under the Principal and Income Act, which existed prior to the legislature's enactment of the Uniform Trust Code. *See* Law of Jan. 1, 2005, 2004 Ky. Laws ch. 158 (amended 2014).

Town & Country argues that the Trust gave it almost unlimited discretion with regard to the distribution of trust principal. (D.N. 51-1, PageID # 645; D.N. 56, PageID # 1026-27) Plaintiffs claim that Town & Country did not have unlimited discretion and that the bank breached its fiduciary duty to them by favoring Lila Kerns's heirs. (D.N. 50-1, PageID # 388; D.N. 57, PageID # 1127-28) The Court will analyze each complained-of action separately.

---

[9] Plaintiffs also complain that Town & Country did not inform them prior to deciding to pay all of Lila Kerns's caregiver expenses out of Trust A-2. (*See* D.N. 50-1, PageID # 395-96; D.N. 57, PageID # 1141-43) However, they have not cited to materials in the record showing that Town & Country failed to inform them of this decision. (*See id.*) *See* Fed. R. Civ. P. 56(c)(1). In any event, it is undisputed that Town & Country sent Plaintiffs monthly statements in January 2014 when the decision was made to pay all caregiver expenses out of Trusts A-2 and B. (D.N. 56-3, PageID # 1088; *see* D.N. 56-8, PageID # 1112) Plaintiffs' argument that Town & Country failed to inform them of this decision is therefore not supported by the facts. And to the extent Plaintiffs argue that they were entitled to notification prior to Town & Country relying more heavily upon Trust A-2 for caregiver expenses, such an argument is not supported by Kentucky law. *See Jarvis v. Nat'l City*, 410 S.W.3d 148, 158 (Ky. 2013) (noting that the duty to keep beneficiaries reasonably informed "may be satisfied by relatively informal reports that reveal trust assets and liabilities, receipts and disbursements, and other transactions involving trust property" (quoting Restatement (Third) of Trusts § 83 (Am. Law Inst. 2003))).

### a.  Town & Country's Pre-Uniform Trust Code Actions

The Kentucky Principal and Income Act provides:

> In allocating receipts and disbursements to or between principal and income, and with respect to any matter within the scope of Articles 2 and 3 [of the Act], a fiduciary . . . [s]hall administer a trust or estate in accordance with the terms of the trust or the will . . . [and] [m]ay administer a trust or estate by the exercise of a discretionary power of administration given to the fiduciary by the terms of the trust or the will . . . .

§ 386.452(1)(a)-(b).  In exercising a discretionary power of administration, "a fiduciary shall administer a trust or estate impartially, based on what is fair and reasonable to all of the beneficiaries, except to the extent that the terms of the trust or the will clearly manifest a contrary intention."  § 386.452(2).

### i.  Payments to Tracy Humphrey

In November 2013, Town & Country used funds from Trust A-2 to pay Tracy Humphrey $8,000 in back pay for caregiver services she provided to Lila Kerns.  (D.N. 51-8, PageID # 745, 751)  Prior to making this disbursement, Town & Country reviewed time sheets signed by Beam and Humphrey, communicated with RMS to confirm that RMS had not already paid Humphrey, and reviewed statements from Merrill Lynch to ensure that it had not already paid caregivers for the relevant hours.  (*Id.*, PageID # 745)  From this information, Town & Country determined that the $8,000 payment to Humphrey was appropriate.  (*Id.*)  When Town & Country later learned that Humphrey was arrested for cocaine possession in August 2013 (D.N. 57-16, PageID # 1307-09), it reviewed the relevant time sheet but could not conclude that Humphrey had been paid for time that she did not spend working.  (*See* D.N. 51-8, PageID # 745-46)  Moreover, after discussion with Beam, Town & Country determined that another caregiver, and not Humphrey, ultimately received payment for the hours worked following Humphrey's arrest.  (*See id.*, PageID # 746; D.N. 51-7, PageID # 729)

The Trust provides that "[t]he trustee may in its discretion pay to my wife [Lila Kerns], or use for her benefit, so much or all of the principal of Trust A or Trust B as the trustee from time to time determines to be required or desirable for her support, welfare[,] and best interests." (D.N. 51-2, PageID # 665)  It is undisputed that Town & Country paid Humphrey $8,000 for caregiver services rendered to Lila Kerns.  (D.N. 51-8, PageID # 745, 751)  Caregiver services fall within the category of expenses required for Lila Kerns's "support, welfare[,] and best interests."  (*See* D.N. 51-7, PageID # 726, 734-35)  Although Plaintiffs cite evidence in the record showing that Humphrey was arrested on August 29, 2013 (D.N. 57-16, PageID # 1308-09), they have not shown that Humphrey kept any payment for services rendered on that date. By contrast, Town & Country has presented evidence showing that it investigated the issue and determined that no improper payments were made to Humphrey.  (*See* D.N. 51-8, PageID # 745-46; D.N. 51-7, PageID # 729)  The Court cannot conclude that Town & Country breached its fiduciary duty to Plaintiffs by making this payment.

### ii.        Payments to Neola Greenwell

Greenwell (Lila Kerns's sister and Beam's mother) also received payment from trust funds for caregiver services rendered to Lila Kerns.  (D.N. 51-8, PageID # 746)  As of August 2011, however, Greenwell had health issues of her own, according to Beam.  (D.N. 57-4, PageID # 1196; D.N. 57-17, PageID # 1311-12)  Town & Country later explained that Greenwell was "a pass through for work actually performed by someone else."[10]  (D.N. 57-18, PageID # 1315) Tackett, a trust officer at Town & Country, clarified in his deposition that the money was paid through Paychex, a third-party paycheck provider, and that Greenwell was added to the payroll by Beam after Beam informed the bank that she needed to hire another caregiver.  (D.N. 51-8,

_____

[10] The Court acknowledges that this arrangement appears imprudent.

PageID # 741, 746)  Tackett told Beam to contact Paychex if she was going to add another caregiver, and he did not know at the time that the person Beam planned to add was Greenwell. (*Id.*, PageID # 746)

The Trust expressly gives Town & Country the power, as trustee, to spend as much of the principal as necessary for the "support, welfare[,] and best interests" of Lila Kerns.  (*See* D.N. 51-2, PageID # 665)  It is undisputed that caregiver services were necessary for Lila Kerns's support and welfare.  (*See* D.N. 51-7, PageID # 726, 734-35)  And Town & Country is permitted to rely on the terms of the Trust in making disbursement decisions.  *See* Ky. Rev. Stat. § 386.452(1)(a).  Notably, Town & Country made this payment through Paychex, not directly to Neola Greenwell, and at the time the bank informed Beam that she needed to contact Paychex to add another caregiver, it did not know that Greenwell would be the caregiver.  (*See* D.N. 51-8, PageID # 746)  The Kentucky statute does not impose upon Town & Country an obligation to investigate every disbursement allegedly necessary for Lila Kerns's welfare; instead, it has a duty to exercise its discretion in an impartial manner that is "fair and reasonable to all of the beneficiaries."  *See* § 386.452(2).  While Plaintiffs have presented evidence showing that Beam made a questionable decision in selecting her mother as a caregiver, Plaintiffs have not shown, or even argued, that *Town & Country* acted impartially or unfairly by permitting Beam to select her mother to be a paid caregiver.  And while the questionable circumstances of Neola Greenwell's hiring should have been avoided, the Court cannot conclude that Town & Country breached its fiduciary duty to Plaintiffs by making this payment.

### iii.      Payment of All Caregiver Expenses from Trust A-2

On December 13, 2013, Beam inquired whether bills she sent for Lila Kerns were being paid out of the funds formerly in Trust A-1 (D.N. 57-14, PageID # 1303), which were then

contained in Lila Kerns's IMA (D.N. 51-4, PageID # 691). Town & Country responded that one-third of caregiver expenses were paid out of the IMA, with the remaining two-thirds paid out of Trust A-2. (D.N. 57-14, PageID # 1302) In January 2014, however, Town & Country started paying all of Lila Kerns's caregiver expenses from Trusts A-2 and B. (D.N. 51-8, PageID # 748; D.N. 51-4, PageID # 691) Town & Country argues that this change was consistent with (1) Merrill Lynch's practice of paying all caregiver expenses from the Trusts; and (2) the terms of the Trust, which authorized the trustee to pay to Lila Kerns as much of the principal as necessary for her support. (D.N. 51-1, PageID # 630-31; D.N. 56, PageID # 1040)

After Town & Country changed the disbursement arrangement as described above, it was able to pay all of Lila Kerns's caregiver expenses with trust funds. (*See* D.N. 51-8, PageID # 748) Paying such expenses with trust funds was consistent with Merrill Lynch's administration of the Trust (*id.*). As discussed above, during Merrill Lynch's tenure as trustee, the Trust included Trust A-1 (*see* D.N. 51-7, PageID # 737). By the time Town & Country administered the Trust, Trust A-1 had been dissolved and the assets placed in Lila Kerns's IMA, an action authorized by the terms of the Trust. (*Id.*; D.N. 51-8, PageID # 742; D.N. 51-4, PageID # 691; *see* D.N. 51-2, PageID # 666) The funds formerly contained in Trust A-1 became the personal funds of Lila Kerns. (*See* D.N. 51-7, PageID # 737; D.N. 51-8, PageID # 742; D.N. 51-4, PageID # 691) Town & Country thought it inappropriate to continue paying one-third of Kerns's caregiver expenses out of those personal funds when the Trust instructed the bank as trustee to "in its discretion pay to [Lila Kerns], or use for her benefit, so much or all of the *principal* of Trust A or Trust B as the trustee from time to time determines to be required or desirable for her support, welfare[,] and best interests." (D.N. 51-2, PageID # 665 (emphasis added); *see* D.N. 51-8, PageID # 747-48; D.N. 51-4, PageID # 691)

Plaintiffs argue that with this decision, Town & Country breached its fiduciary duty by improperly favoring the heirs of Lila Kerns (who would inherit the remainder of the funds in the IMA at her death) over them, the remainder beneficiaries of Trusts A-2 and B. (*See* D.N. 57, PageID # 1127-29) Plaintiffs rely heavily upon *Hurst v. First Kentucky Trust Co.*, in which the Kentucky Supreme Court adopted the rule from the Restatement (Second) of Trusts that "[w]here there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." 560 S.W.2d 819, 821 (Ky. 1978). In *Hurst*, the parties disputed whether assets allocated by will to the decedent's widow and by trust to the decedent's niece should be distributed by reference to their value for federal tax purposes or their actual value at distribution. *Id.* at 820-21. The court affirmed the lower court's decision that assets be distributed equitably so that all distributions would be representative of appreciation or depreciation in value at the time of distribution. *Id.* at 821. The alternative, the court reasoned, would permit a fiduciary to favor one beneficiary to the detriment of the other. *Id.* at 821-22.

But *Hurst* is readily distinguishable from the present case. In *Hurst*, co-executors were tasked with distributing assets between a beneficiary of a will and a beneficiary of a trust. *See id.* at 820-21. In the present case, Town & Country was responsible for managing Trusts A-2 and B, of which Plaintiffs were the only remainder beneficiaries. (*See* D.N. 51-8, PageID # 742; D.N. 50-2, PageID # 408-09) Trust A-1 ceased to exist after Town & Country distributed the funds to Lila Kerns's IMA. (*See* D.N. 51-7, PageID # 737; D.N. 51-8, PageID # 742; D.N. 51-4, PageID # 691) Town & Country therefore no longer maintained a fiduciary obligation to Plaintiffs with respect to those personal funds. Moreover, the "obvious intent of the testator" in *Hurst* was to leave his wife one-half of his estate. 560 S.W.2d at 822. Thomas Kerns, by contrast, instructed

the trustee to pay "so much or all" of the trust principal for his wife's benefit. (D.N. 51-2, PageID # 665)

Plaintiffs also rely on *Wiggins v. PNC Bank, Kentucky, Inc.*, in which the Kentucky Court of Appeals noted that trustees owe a duty of "'utmost fidelity' to the beneficiaries of a trust." 988 S.W.2d 498, 501 (Ky. Ct. App. 1998) (quoting *Bryan v. Sec. Tr. Co.*, 176 S.W.2d 104, 107 (Ky. 1943)). *Wiggins* involved two trusts: one created by a mother for her daughter, authorizing the trustee to use as much of the principal as necessary for the daughter's maintenance and welfare (trust 1), and another created by the daughter during her lifetime for her own benefit (trust 2). *Id.* at 499-500. The trustee invaded the principal of trust 1 to pay nursing-home expenses for the daughter. *Id.* at 500. The descendants entitled to the remainder of trust 1 upon the daughter's death sued the trustee, alleging that it had a conflict of interest in serving as trustee of both trusts and invading the principal of trust 1 to the detriment of its remainder beneficiaries. *Id.* The court found that a conflict of interest existed and ruled in favor of the descendants because the trustee violated a Kentucky statute by failing to obtain court authorization before taking action. *Id.* at 501-02. The court's holding rested on the precursor to Ky. Rev. Stat. § 386.820, which stated that if a duty of the trustee and his interest as trustee of another trust conflicted, the power could be exercised only by court authorization. *See id.* at 500, 502.

*Wiggins* is thus distinguishable from the present case as well. The *Wiggins* court held that the trustee violated a Kentucky statute in failing to obtain court authorization before taking action where its interests as trustee of two separate trusts were in conflict. *See id.* at 500-02. In this case, Town & Country acted as trustee of Trusts A-2 and B, which had the same remainder beneficiaries: Plaintiffs. (*See* D.N. 51-8, PageID # 742, 748; D.N. 57-1, PageID # 1161-62)

Town & Country did not act as trustee of any other trust with different remainder beneficiaries.[11] (*See* D.N. 51-8, PageID # 742, 748)  Thus, Town & Country did not face a conflict of interest like the one considered in *Wiggins*.

Plaintiffs maintain that the funds formerly in Trust A-1 were removed to Lila Kerns's IMA at the recommendation of Town & Country and that the bank treated the IMA in the same manner that Trust A-1 had been treated for some time after the funds were removed.  (D.N. 57, PageID # 1137-38; D.N. 50-1, PageID # 393-94)  The evidence shows that an employee of Town & Country indeed suggested that it would be in Lila Kerns's best interest to make Trust A-1 an IMA in accordance with the terms of the Trust.  (D.N. 50-8, PageID # 474)  And Town & Country did in fact continue paying one-third of Lila Kerns's caregiver expenses using the funds in the IMA for a period of time after assuming the trusteeship.  (*See* D.N. 50-15, PageID # 535)  But neither of these facts made Town & Country "trustee" of the IMA.  The IMA was no longer a trust; it was a personal account.  (*See* D.N. 51-7, PageID # 737; D.N. 51-4, PageID # 691)

In sum, the undisputed facts show that the terms of the Trust authorized Town & Country's decision to pay all of Lila Kerns's caregiver expenses from the Trusts.  The Trust allowed the trustee to pay some or all of the principal for Lila Kerns's benefit and did not require Town & Country to consider the interests of any other beneficiary in making such distributions.  (*See* D.N. 51-2, PageID # 665)  And Town & Country did not favor one group of remainder beneficiaries over another because the trusts it administered had only one set of beneficiaries.

_____

[11] Plaintiffs' counsel asserted at oral argument that Trust A-1 was distributed to an IMA after it arrived at Town & Country as a trust.  The undisputed evidence in the record shows, however, that Lila Kerns made the decision to withdraw the assets in Trust A-1 on July 25, 2013 (D.N. 51-7, PageID # 737), before Town & Country took over as trustee on October 1, 2013 (*see* D.N. 51-4, PageID # 691, 695).  Those assets were placed into an IMA upon Town & Country's receipt of the trust funds from Merrill Lynch.  (D.N. 51-4, PageID # 691)  It follows that Town & Country never served as trustee with respect to Trust A-1.

The Court concludes that Town & Country did not breach its fiduciary duty in paying all caregiver expenses from Trust A-2.

### iv.     Failure to Meet With and Inform Plaintiffs

Town & Country considered calling Plaintiffs to discuss removing Merrill Lynch as trustee when it first met with Beam in November 2012.  (D.N. 50-8, PageID # 472-73)  The call, however, never took place.  (*See id.*, PageID # 473)  Town & Country also contemplated getting all of the beneficiaries to agree to move the Trust, but it ultimately determined that the terms of the Trust might not require agreement.  (*See* D.N. 50-30, PageID # 608)  Richard Kerns learned that the Trust was being moved to Town & Country from someone at Merrill Lynch.  (D.N. 50-9, PageID # 479)  Town & Country argues that it was under no obligation to alert Plaintiffs of the possibility of the Trust moving to the bank before Merrill Lynch had actually been removed as trustee.  (D.N. 56, PageID # 1042)

Plaintiffs rely on *JP Morgan Chase Bank, N.A. v. Longmeyer*, 275 S.W.3d 697 (Ky. 2009), for the proposition that the duty of a trustee to keep beneficiaries informed extends beyond sending monthly statements.[12]  (*See* D.N. 50-1, PageID # 395)  In *Longmeyer*, the settlor created a revocable living trust naming herself as income beneficiary for life and several charities as remainder beneficiaries that would receive a sizable portion of her estate at her death.  275 S.W.3d at 699.  A bank was named trustee.  *Id.*  Ten years later, the settlor hired an attorney, Longmeyer, to make changes to her estate plan.  *Id.*  Under the new estate plan, the charities were removed as beneficiaries, and Longmeyer was named trustee.  *Id.*  After consulting counsel, the bank (as former trustee) sent letters to each of the charities that had been removed as beneficiaries notifying them of the revisions to the estate plan.  *Id.* at 700.  Longmeyer, who was

---

[12] Town & Country began sending Plaintiffs account statements after it took over as Trustee. (*See* D.N. 56-8, PageID # 1112; D.N. 56-3, PageID # 1088)

then executor of the estate, sued the bank, arguing that the bank breached its fiduciary duties when it disclosed information about the trust revisions to the former beneficiaries. *Id.*

The Kentucky Supreme Court reiterated its prior holding that "a trustee has a specific duty, inherent to the trust relationship, to provide information relating to the trust and that this specific duty extends to conditional or contingent beneficiaries." *Id.* at 701 (citing *Day v. Walker*, 445 S.W.2d 422, 424 (Ky. 1969)). The court further noted that Ky. Rev. Stat. § 386.715 (which has since been repealed) provided that "[t]he trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration." *Id.* at 701 n.7. The court reasoned that the statute "establish[ed] a right of beneficiaries to information concerning their interest or expectancy in the trust." *Id.* at 702. According to the court, the revisions "dramatically affected the interests of the former beneficiaries" by eliminating their interests altogether, and the bank was legally obligated under the statute to provide the charities with information regarding their removal as beneficiaries of the trust. *Id.* at 702-03. The court therefore reinstated summary judgment in favor of the bank. *Id.* at 705.

Town & Country attempts to distinguish *Longmeyer* from this case on two grounds: (1) Plaintiffs' interests were not being eliminated; and (2) the Trust here is irrevocable, unlike the trust in *Longmeyer*. (D.N. 56, PageID # 1043) But the *Longmeyer* court did not limit its holding to those particular circumstances. Instead, it explained that a trustee has a statutory duty to communicate "material facts affecting the interests of the beneficiaries" and indicated that the duty to keep beneficiaries reasonably informed applied to irrevocable trusts as well. *See Longmeyer*, 275 S.W.3d at 701-02. Town & Country's efforts to distinguish *Longmeyer* are unavailing. While the holding did rest upon a Kentucky statute, Ky. Rev. Stat. § 386.715, that has since been repealed, *Longmeyer* remains good law. *See Osborn v. Griffin*, 865 F.3d 417,

444-45 (6th Cir. 2017) (citing *Longmeyer*, 275 S.W.3d at 701). Town & Country had a fiduciary duty to keep Plaintiffs reasonably informed of material facts affecting their interests.

Plaintiffs argue that Town & Country should have contacted them to discuss removal of Merrill Lynch as trustee and to notify them that the Trust was being moved. (*See* D.N. 50-1, PageID # 395; D.N. 57, PageID # 1141) But since Town & Country was not trustee until it was appointed and Merrill Lynch removed (*see* D.N. 51-4, PageID # 695), Town & Country could not have breached any duty to keep Plaintiffs informed until it actually became trustee of Trusts A-2 and B. *Cf. Longmeyer*, 275 S.W.3d at 702-03 (holding only that *former trustee* had a duty to inform beneficiaries of revisions to trust that affected their interests); *Rose v. Vanhoose*, No. 2015-CA-001001-MR, 2017 WL 2332687, at *3 (Ky. Ct. App. May 26, 2017) ("Certainly the fiduciary duties of the administrator [of the estate] attached at the time of her appointment.").

The remaining issue is whether Town & Country violated its duty by failing to inform Plaintiffs that the Trust had been moved. This Court looks to the Restatement (Third) of Trusts to determine the scope of a trustee's duty to inform. *See Anderson v. Old Nat'l Bancorp*, 675 F. Supp. 2d 701, 715-16 (W.D. Ky. 2009). A trustee has a duty to inform beneficiaries "of basic information concerning the trusteeship" and to keep beneficiaries "reasonably informed of changes involving the trusteeship and about other significant developments concerning the trust and its administration." Restatement (Third) of Trusts § 82 (Am. Law Inst. 2007). Because universal rules are precluded by differences in trust and beneficiary circumstances, "the trustee's duty is to exercise reasonable judgment in deciding when, about what, and to whom information is to be provided." *Id.*, cmt. a. The comment further provides that a trustee's duty to provide information to beneficiaries may apply where there are "significant changes in trustee circumstances, including changes in their identities." *Id.*, cmt. d.

The Court will assume for purposes of this analysis that Town & Country maintained a fiduciary duty as trustee to inform Plaintiffs that the Trust had been moved from Merrill Lynch to the bank. Plaintiffs have not shown that Town & Country failed to inform them that the Trust had been moved from Merrill Lynch once it took over as trustee, however. Richard Kerns admitted in his deposition that he started receiving monthly statements from Town & Country either as soon as Town & Country took over or within a month or two thereafter. (D.N. 50-9, PageID # 479) Based on these undisputed facts, the Court concludes that Town & Country did not breach the duty to inform Plaintiffs that the Trust had been moved.

### b. Town & Country's Post-Uniform Trust Code Actions

The Uniform Trust Code, as adopted by the Kentucky legislature in 2014, provides that "[a] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." Ky. Rev. Stat. § 386B.8-110.

### i. Failure to Take Action Against Beam

As discussed in Section III.A above, Beam was permitted to live in Lila Kerns's house in Bardstown for approximately one year without paying rent while she cleaned the house and prepared it for sale. (*See* D.N. 51-7, PageID # 731-33; *see also* D.N. 57-23, PageID # 1335) On July 28, 2014, Town & Country sent Beam and Lila Kerns a letter purporting to confirm an agreement that Beam would repay Trust A-2 for the mortgage payments it funded while she lived in the house rent-free. (D.N. 57-23, PageID # 1335-36) However, Beam never signed the agreement or any other agreement to reimburse the Trust. (*See* D.N. 57-12, PageID # 1286-89) Plaintiffs now argue that Town & Country's failure to take action against Beam to recover those funds constitutes a breach of fiduciary duty.

Because it occurred after July 15, 2014, this alleged inaction is governed by the Uniform Trust Code. *See* Ky. Rev. Stat. § 386B.11-040(1)(e). The Code requires the trustee to "take reasonable steps to enforce claims of the trust." *See* § 386B.8-110. Plaintiffs have failed to show that Town & Country breached its fiduciary duty to Plaintiffs by not bringing suit against Beam. Town & Country notes that Lila Kerns, as owner of the house, was responsible for making the mortgage payments regardless of whether she lived there, with foreclosure being the probable outcome of her failure to do so. (D.N. 51-1, PageID # 653; D.N. 56, PageID # 1046) Making payments on Lila Kerns's mortgage thus qualifies as a disbursement necessary for her "best interests" under the terms of the Trust. (*See* D.N. 51-2, PageID # 665) Moreover, Beam added value to the house by cleaning it and preparing it for sale. (D.N. 51-7, PageID # 732; *see* D.N. 57-23, PageID # 1335) The statute requires only that Town & Country take "reasonable steps" to enforce claims of the Trust. *See* § 386B.8-110. Given the likely cost to the Trust of bringing suit against Beam, the Court concludes that Town & Country did not breach its fiduciary duty to Plaintiffs in declining to take further legal action against her.

In sum, the Court cannot conclude that Town & Country breached its fiduciary duties to Plaintiffs with respect to the aforementioned actions. As a result, the Court will grant summary judgment to Town & Country on Plaintiffs' breach-of-fiduciary-duty claim.

### 2.    Disgorgement

"Disgorgement is a traditional equitable remedy." *Borders & Borders, PLC*, 2017 WL 2989183, at *7). In their complaint, Plaintiffs bring a claim against Town & Country for disgorgement. (D.N. 16) They argue that Town & Country should be required to disgorge the fees it received as trustee. (*Id.*) In addition, they argue that Town & Country should be ordered to repay the Trust for attorney fees it paid using trust funds. (*Id.*; D.N. 57, PageID # 1146)

Plaintiffs do not explicitly address their disgorgement claim in their briefs. Town & Country, however, argues that summary judgment is appropriate on Plaintiffs' disgorgement claim because the bank has not profited from any wrongdoing. (*See* D.N. 51-1, PageID # 656-57)

Kentucky statutes permit a trustee to charge its compensation to both the trust income and the principal. *See* Ky. Rev. Stat. §§ 386.490(1), 386.492(1)(a); *see also* § 386B.7-080. Because the Court concludes that Town & Country did not breach its fiduciary duty to Plaintiffs, *see supra* Section III.B.1, the Court will not order the bank to disgorge its fees.

Trustees may not use trust funds to pay attorney fees incurred in defending a breach-of-fiduciary-duty claim; instead, trustees must wait and seek reimbursement from the trust at the conclusion of the case if they are successful. *See Sierra v. Williamson*, 784 F. Supp. 2d 774, 777-78 (W.D. Ky. 2011); *Salmon v. Old Nat'l Bank*, No. 4:08-CV-116-M, 2010 WL 1463196, at *2-3 (W.D. Ky. Apr. 8, 2010). Plaintiffs cite no evidence showing that Town & Country used funds from the Trust to pay attorney fees it incurred in defending this action. Rather, they seek to recover attorney fees paid in administering the Trust *before* this litigation began. (*See* D.N. 57, PageID # 1146; D.N. 50-1, PageID # 397) Plaintiffs posit that the fees Town & Country paid from the Trust prior to litigation would still have been incurred had they filed their lawsuit earlier instead of first trying to resolve the dispute, and in that case, the bank would not have been able to pay the fees with funds from the Trust. (D.N. 57, PageID # 1148) Plaintiffs argue that they should not be punished for first attempting to resolve the dispute without litigation. (*Id.*)

The Court is unaware of any authority, and Plaintiffs cite none, to support the argument that a trustee cannot pay attorney fees using trust funds if the fees are incurred during a period of attempted dispute resolution preceding litigation. Kentucky statutes both before and after the enactment of the Uniform Trust Code permitted trustees to employ attorneys to assist them in the

performance of their duties.  *See* Law of July 12, 2012, 2012 Ky. Laws ch. 59, § 5 (repealed

2014); Ky. Rev. Stat. § 386B.8-160(29)(a).  The Court therefore concludes that disgorgement is

unwarranted under these circumstances.

### 3.    Accounting

Plaintiffs assert in their complaint that Town & Country "should be required to provide a

full accounting of the assets it has managed as trustee of the Trust."  (D.N. 16, PageID # 133)

Town & Country does not oppose Plaintiffs' request but asks for a reasonable amount of time to

provide the accounting.  (D.N. 51-1, PageID # 657)  "An accounting is an equitable remedy and

is . . . defined as an 'adjustment of the accounts of the parties and a rendering of a judgment for

the balance ascertained to be due.'"  *Watkins*, 2017 WL 3710088, at *7 (quoting *Gentry v.

Coffey*, No. 2006-CA-002293-MR, 2007 WL 4465573, at *1 (Ky. Ct. App. Dec. 21, 2007)).  "An

accounting claim is based on a theory of unjust enrichment because an accounting 'mandat[es]

the return of any benefit received as a result of a breach of fiduciary duty.'"  *Id.* (quoting *Gentry*,

2007 WL 4465573, at *1).  "To be entitled to a court-ordered accounting, [Plaintiffs] must

demonstrate that [Town & Country] owes [them] money."  *Id.*

Plaintiffs have not shown that Town & Country breached its fiduciary duty or that they

are entitled to repayment of trustee or attorney fees.  *See supra* Sections III.B.1-2.  Their request

for a court-ordered accounting thus fails as a matter of law.[13]  *See Watkins*, 2017 WL 3710088, at

*7.

---

[13] The Court's conclusion here that Plaintiffs are not entitled to a court-ordered accounting does
not preclude them from requesting an accounting directly from Town & Country, as it has
expressed willingness to provide an accounting within a reasonable amount of time.  (*See* D.N.
51-1, PageID # 657)

### 4. Removal of Trustee

In their complaint, Plaintiffs seek to remove Town & Country as trustee. (D.N. 16) Their summary-judgment briefs, however, do not address this claim specifically. Town & Country, on the other hand, argues that the trustee-removal claim should be dismissed because (1) Plaintiffs have not identified a replacement trustee; and (2) Kentucky district courts have exclusive jurisdiction over matters involving the removal of a trustee. (D.N. 51-1, PageID # 657)

> Under Kentucky statute, a court may remove a trustee if
>
> (a) The trustee has committed a breach of trust;
> (b) Lack of cooperation among cotrustees substantially impairs the administration of the trust;
> (c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; [or]
> (d) There has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available . . . .

Ky. Rev. Stat. § 386B.7-060(2). The statute further provides that the Kentucky district courts "shall have exclusive jurisdiction over matters . . . relating to the office of the trustee." § 386B.7-100. However, "[s]tate legislatures are powerless to impose jurisdictional constraints upon the federal judiciary." *Brown v. City of Memphis*, 440 F. Supp. 2d 868, 878 (W.D. Tenn. 2006). While the Court may properly consider the claim, removal is not warranted here. Town & Country did not breach its fiduciary duty to Plaintiffs in administering the Trust. *See supra* Section III.B.1. This case does not involve cotrustees. While Plaintiffs have complained of various actions by Town & Country, the facts do not demonstrate that removal of the bank as trustee would be in their best interests. To the contrary, the facts show that despite Lila Kerns's

substantial expenses during Town & Country's tenure as trustee, Plaintiffs' remainder interest has decreased only slightly. (*See* D.N. 51-4, PageID # 692-93) Finally, no successor trustee has been presented to the Court. The Court therefore finds no basis for removing Town & Country as trustee.

## IV.  ATTORNEY FEES AND COSTS

Beam also requested an award of costs and attorney fees in her motion for summary judgment. (D.N. 49-1, PageID # 248) Federal Rule of Civil Procedure 54 provides that costs should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1); *see also* 28 U.S.C. § 1920 (listing items that may be taxed as costs and calling for the filing of a bill of costs). Rule 54 further provides that a claim for attorney fees must be made by motion. Fed. R. Civ. P. 54(d)(2). The Local Rules of this Court provide instruction as to the filing of bills of costs and motions for attorney fees. *See* LR 54.3; L.R. 54.4. The parties should proceed with any requests for attorney fees and costs in accordance with the applicable rules.

## V.  CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Wanda Beam's motion for summary judgment (D.N. 49) is **REINSTATED** and **GRANTED**.

(2)  Town & Country Bank and Trust Company's motion for partial summary judgment (D.N. 51) is **REINSTATED** and **GRANTED**.

(3)  Plaintiffs' motion for summary judgment (D.N. 50) is **REINSTATED** and **DENIED**.

(4)     This matter is **REFERRED** to Magistrate Judge Dave Whalin for a status conference regarding Town & Country's outstanding counterclaims.

May 31, 2018

David J. Hale, Judge
United States District Court